NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**OYSTER OPTICS, LLC,**
*Plaintiff-Appellant*

**v.**

**ALCATEL-LUCENT USA, INC., CISCO SYSTEMS, INC.,**
*Defendants-Appellees*

---

2019-1255, 2019-1257

---

Appeals from the United States District Court for the Eastern District of Texas in Nos. 2:16-cv-01297-JRG, 2:16-cv-01301-JRG, 2:16-cv-01302-JRG, Judge J. Rodney Gilstrap.

---

SEALED OPINION ISSUED: May 8, 2020
PUBLIC OPINION ISSUED: May 27, 2020*

---

REZA MIRZAIE, Russ August & Kabat, Los Angeles, CA, argued for plaintiff-appellant. Also represented by MARC AARON FENSTER, BAHRAD A. SOKHANSANJ.

---

* This opinion was originally filed under seal and has been unsealed in full.

MATTHEW S. STEVENS, Alston & Bird LLP, Charlotte, NC, argued for defendant-appellee Alcatel-Lucent USA, Inc. Also represented by KIRK T. BRADLEY, STEPHEN LAREAU, CHRISTOPHER CHARLES ZIEGLER; JOHN D. HAYNES, Atlanta, GA.

JOHN C. O'QUINN, Kirkland & Ellis LLP, Washington, DC, argued for defendant-appellee Cisco Systems, Inc. Also represented by JASON M. WILCOX; MATTHEW CHRISTOPHER GAUDET, L. NORWOOD JAMESON, Duane Morris LLP, Atlanta, GA; JOHN MATTHEW BAIRD, Washington, DC.

---

Before LOURIE, SCHALL, and CHEN, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Oyster Optics, LLC ("Oyster") is the owner of U.S. Patent No. 7,620,327 ("the '327 patent"). The '327 patent is directed to transceiver cards for sending and receiving data over a fiber optic network. In November of 2016, Oyster sued various fiber optic equipment manufacturers in the United States District Court for the Eastern District of Texas for infringement of the '327 patent. Among the defendants were Alcatel-Lucent USA, Inc. ("ALU") and Cisco Systems, Inc. ("Cisco").[1] On September 4, 2018, addressing the parties' cross-motions for summary judgment, the district court granted partial summary judgment in favor of ALU and Cisco. The court did so because it found that a settlement agreement between Oyster and Fujitsu Limited ("Fujitsu") and Fujitsu Network Communications, Inc. ("FNC") ("the Oyster/Fujitsu Agreement" or "the Agreement") had the effect of releasing ALU and Cisco from

---

[1]    Where appropriate, we refer to ALU and Cisco collectively as "Appellees."

liability for infringement of the '327 patent. *See* Order Granting Defs.' Mot. for Partial Summ. J. Regarding Their Release Defense, *Oyster Optics, LLC. v. Coriant (USA) Inc.*, No. 2:16-cv-01302 (E.D. Tex. Dec. 4, 2018), ECF No. 864 (redacted), J.A. 33–50 ("*Summary Judgment Decision*").[2] For the reasons stated below, we *affirm*.

## BACKGROUND

### I.

In November of 2016, Oyster sued FNC for infringement of the '327 patent. In its suit, Oyster alleged that FNC infringed the patent by "making, selling, using, offering for sale, and/or causing to be used" versions of Fujitsu's 100G/400G LN Modulator and 100G/400G Integrated Coherent Receiver, among other products. *Summary Judgment Decision* at 12–15.[3] Separately, Oyster also sued ALU and Cisco for infringement of the '327 patent. Oyster's suits against ALU and Cisco were based upon their sales of various products, at least some of which contained Fujitsu modulators and receivers. *See id.* at 5. Subsequently, Oyster's suits against ALU and Cisco were consolidated with its suit against FNC. *Id.* at 1.[4]

---

[2]    The district court subsequently issued an order clarifying the scope of the *Summary Judgment Decision.* Order, *Oyster Optics, LLC. v. Coriant (USA) Inc.*, No. 2:16-cv-01302 (E.D. Tex. Nov. 7, 2018), ECF No. 850, J.A. 26–28 ("*November 7th Order*"). The *November 7th Order* also granted a joint motion to sever any claims not resolved by the *Summary Judgment Decision* into two new actions, one case for Oyster's remaining claims against ALU and another for Oyster's remaining claims against Cisco. *Id.*

[3]    We refer to these accused items as "Fujitsu modulators and receivers."

[4]    The ALU, Cisco, and FNC litigations were member case Nos. 2:16-cv-01297-JRG, 2:16-cv-01301-JRG, and

Claim 25 of the '327 patent, which the parties agree is illustrative, recites:

A transceiver card for a telecommunications box for transmitting data over a first optical fiber and receiving data over a second optical fiber, the card comprising:

a transmitter for transmitting data over the first optical fiber, the transmitter having a laser, a modulator and a controller receiving input data and controlling the modulator as a function of the input data, the transmitter transmitting optical signals for telecommunication as a function of the input data;

a fiber output optically connected to the laser for connecting the first optical fiber to the card;

a fiber input for connecting the second optical fiber to the card;

a receiver optically connected to the fiber input for receiving data from the second optical fiber; and

an energy level detector to measure an energy level of the optical signals, the energy level detector including a threshold indicating a drop in amplitude of a phase-modulated signal.

'327 patent col. 8 ll. 6–24.

In May of 2018, Oyster settled its suit against FNC by entering into the Oyster/Fujitsu Agreement. *Summary Judgment Decision* at 1–2. To the extent relevant to this appeal, in Section 3.1 of the Agreement Oyster releases

2:16-cv-01299-JRG, respectively. These member cases were consolidated into lead case No. 2:16-cv-01302-JRG, a suit Oyster originally filed against Coriant (USA) Inc. ("Coriant"). Coriant is not a party to this appeal.

"FNC, Fujitsu, and their Affiliates" from "any and all claims of infringement under any patent right within the Licensed Patents, on account of any product, process, or service exported or imported, made, had been made, used, distributed, offered to sell, sold, or otherwise disposed of by FNC, Fujitsu, and their Affiliates." *Id.* at 3–4. Section 3.1 further states that Oyster's release extends to "all customers . . . of FNC, [Fujitsu], and their Affiliates, but only to the extent such customers . . . exported or imported, made, have had made, used, distributed, offered to sell, sold, or otherwise disposed of Licensed Products or components of Licensed Products." *Id.* at 4. In Section 4.1 of the Agreement, Oyster grants to "FNC, Fujitsu, and their Affiliates" a forward-looking license under the "Licensed Patents" with respect to "Licensed Products." *Id.* The terms "Affiliate," "Licensed Patents," and "Licensed Products" are defined in Sections 1.1, 1.2, and 1.3 of the Agreement, respectively. *Id.* at 2–3.

Section 1.3 of the Agreement states that "Licensed Products" means "any products, product lines, services, devices, systems, components, hardware, software and/or software algorithm and/or combination of any one or more of the foregoing, made, sold, imported, or distributed by or for FNC, [Fujitsu], or their Affiliates at any time, including those sold to, distributed to, or otherwise provided (directly or indirectly) to any customer by FNC, [Fujitsu], or their Affiliates." *Id.* at 3. The "Licensed Products" definition contains two additional provisions. They are as follows:

> For clarity, this definition of Licensed Products does not prevent Oyster from exercising its patent rights in instances where its infringement allegations do not include or refer to a Licensed Product. For further clarity, this definition of Licensed Products also does not prevent Oyster from exercising its patent rights in instances where its infringement allegations do include or refer to a Licensed Product, unless the only reasonable and intended

> use of the component comprising the Licensed Product is to practice the claim and the component substantially embodies the patented invention by embodying its essential features.

*Id.*

## II.

## A.

In the wake of the Oyster/Fujitsu Agreement, ALU and Cisco moved for partial summary judgment in Oyster's suit against them. ALU and Cisco argued that the Agreement released them from all claims of infringement with respect to their products containing Fujitsu modulators and receivers that arose prior to May 22, 2018, the effective date of the Agreement. Defs.' Mot. for Partial Summ. J. Regarding Their Release Defense, *Oyster Optics, LLC. v. Coriant (USA) Inc.*, No. 2:16-cv-01302 (E.D. Tex. July 24, 2018), ECF No. 691 at 5–8 (redacted) ("*Defendants' Summary Judgment Motion on Release*"). Oyster cross-moved, arguing that ALU and Cisco's defenses of exhaustion, license, and release failed as a matter of law. Mot. for Summ. J. on Alcatel's "New Defenses," *Oyster Optics, LLC. v. Coriant (USA) Inc.*, No. 2:16-cv-01302 (E.D. Tex. July 24, 2018), ECF No. 693 (redacted); Mot. for Summ. J. on Cisco's "New Defenses," *Oyster Optics, LLC. v. Coriant (USA) Inc.*, No. 2:16-cv-01302 (E.D. Tex. July 25, 2018), ECF No. 695 (redacted).

For purposes of their cross-motions, the parties agreed that the following facts were undisputed: (1) The term "Licensed Patents" in the Agreement includes the '327 patent. (2) Fujitsu Optical Components ("Fujitsu Optical") is an "Affiliate," as defined in the Agreement, of Fujitsu. (3) ALU and Cisco each acquired Fujitsu modulators and receivers directly or indirectly from Fujitsu Optical. Thus, ALU and Cisco are customers of Fujitsu in accordance with the release provision of the Agreement. (4) The Fujitsu

modulators and receivers are "products," "devices," "components," and/or "hardware . . . made, sold, imported, or distributed by or for FNC, [Fujitsu], or their Affiliates . . . ." *Summary Judgment Decision* at 4–5.

The district court heard oral argument on the parties' summary judgment motions on August 9, 2018. At the conclusion of the hearing, the court stated that, because the parties agreed the Oyster-Fujitsu Agreement was unambiguous, the court was construing the contract "pursuant to its four corners." Tr. of Pre-Trial Hearing, *Oyster Optics v. Coriant (USA) Inc.*, No. 2:16-cv-01302 (Aug. 9, 2018), ECF No. 824 at 14, 15, 70 ("*Pre-Trial Hearing Transcript*"). The court also stated that, based upon two alternate approaches, it was holding that, under the Oyster/Fujitsu Agreement, ALU and Cisco were released from Oyster's claims of infringement "as to the Fujitsu and its affiliates' products." *Id.* at 72. The court informed the parties that it would issue a written opinion explaining its holdings. *Id.* at 70, 71.

On September 4, 2018, the district court issued the *Summary Judgment Decision.* The court began its analysis by holding that the release of Section 3.1 applies to Fujitsu, Fujitsu Affiliates, including Fujitsu Optical, and customers of Fujitsu and its affiliates, where the customers have "exported or imported, made, have had made, used, distributed, offered to sell, sold, or otherwise disposed of Licensed Products or components of Licensed Products." *Summary Judgment Decision* at 8. The district court stated, "[i]t is undisputed that [ALU and Cisco] are customers of Fujitsu's affiliate Fujitsu Optical." *Id.*

The district court then turned to the question of whether, as customers of Fujitsu Optical, ALU and Cisco were released from liability for infringement by Section 3.1 of the Oyster/Fujitsu Agreement. *Id.* In its motions for summary judgment, Oyster argued that ALU's and Cisco's products were not released from infringement by the

Agreement because, on their own individually, the Fujitsu modulators and receivers contained in the accused products could not satisfy essential claimed features of the '327 patent and thus did not "substantially embod[y]" the patent claims. Therefore, Oyster maintained, it could exercise its patent rights under the "[f]or further clarity" provision of Section 1.3. *Id.* at 10; *see also* Appellant's Br. 13–14. In *Defendants' Summary Judgment Motion on Release*, ALU and Cisco argued that Section 3.1 of the Oyster/Fujitsu Agreement released them from liability for infringement of the '327 patent for those products that contained Fujitsu modulators and receivers that ALU and Cisco purchased from a Fujitsu Affiliate. ALU and Cisco contended that the "[f]or further clarity" provision did not change the scope of the definition of "Licensed Products" set forth in Section 1.3 of the Agreement. Appellees' Br. 13; *see generally Defendants' Summary Judgment Motion on Release.* In separate motions, they also argued that Oyster's patent rights with respect to the accused products under the '327 patent were exhausted as a result of Fujitsu Optical's authorized sales of the modulators and receivers to ALU and Cisco. Appellees' Br. 13.

As to whether the "[f]or further clarity" provision of Section 1.3 limited the definition of "Licensed Products" in Section 3.1, the district court held that the clause only applies to the Agreement's license provision in Section 4.1, where the term "Licensed Products" appears, and not to the customer release provision in Section 3.1, where the term also appears. *Summary Judgment Decision* at 9–10. Referring to the "[f]or further clarity" provision, the court stated: "[I]t means that the law of patent exhaustion is acknowledged by the Parties [to the Agreement] to apply to the Licensed Products identified within the [Agreement]. The provision is a *prospective* preservation[] of rights under the *forward-looking license* of Section 4.1 alone, but it has no effect as to the *retrospective release* of Section [3.1]." *Id.* at 9 (bracketed revisions added).

Concluding, the district court found that the Fujitsu modulators and receivers contained in ALU's and Cisco's products qualified as "Licensed Products" within the meaning of Section 1.3 for three reasons. *First*, the modulators and receivers were at least either "products," "devices," "components," and/or "hardware." *Second*, the modulators and receivers were "made, sold, imported, or distributed" by an Affiliate (Fujitsu Optical). And, *third*, the modulators and receivers were "sold to, distributed to, or otherwise provided (directly or indirectly) to any customer by FNC, Fujitsu Limited, or their Affiliates." *Id.* at 10. The court thus held that the Fujitsu modulators and receivers qualified as "Licensed Products" within the meaning of Section 1.3 of the Agreement. *Id.* at 10–11. Having determined that the Fujitsu modulators and receivers were "Licensed Products," the district court ruled, "all of Oyster's claims based upon the Licensed Patents against any accused product containing a Licensed Product or components of Licensed Products have been released under the [Oyster/Fujitsu Agreement], specifically including accused products sold prior to May 22, 2018, that include a Fujitsu [modulator] or [r]eceiver." *Id.* at 11–12. Accordingly, the court held that ALU and Cisco were released from Oyster's claims for infringement of the '327 patent for those products containing Fujitsu modulators and receivers that were sold prior to the May 22, 2018 effective date of the Agreement.

## B.

In the second part of its summary judgment decision, the district court concluded that there was an alternative ground for concluding that the Oyster/Fujitsu Agreement released ALU and Cisco from liability under the '327 patent. *Id.* at 12. The court determined that, to the extent its holding with respect to the "[f]or further clarity" provision of Section 1.3 was held on appeal to be incorrect, ALU and Cisco still would be released from liability. Specifically, the court found that, in light of Oyster's contentions

and representations "in the prior Fujitsu litigation," the Fujitsu products identified in that litigation "embody the essential features of the patented invention," as required by the "[f]or further clarity" provision of Section 1.3. *Summary Judgment Decision* at 12–17.[5] "Therefore," the court stated, "in the event that the 'for further clarity' provision in Section 1.3 of the [Oyster/Fujitsu Agreement] limits the definition of Licensed Products, the Court holds that Section 3.1's release still applies to the Defendants as to any claim of infringement relating to the '327 Patent where the accused products contain one of the Accused Instrumentalities of the Fujitsu litigation." *Id.* at 17.

The parties sought clarification of what products were encompassed by the *Summary Judgment Decision.* Oyster interpreted "Accused Instrumentalities of the Fujitsu litigation" to mean only those specific model numbers named in infringement contentions referenced in the *Summary Judgment Decision.* In other words, according to Oyster, under the court's alternative ruling, in order to be covered by the release of Section 1.3 as a "Licensed Product" a Fujitsu modulator or receiver contained in an accused ALU or Cisco product had to have the same model number as a modulator or receiver listed in the infringement contentions Oyster served on FNC in case No. 2:16-cv-01299-JRG. For their part, ALU and Cisco interpreted the phrase to include the "category" of Fujitsu products named in the infringement contentions, "'i.e., 100G/400G LN Modulator'

---

[5]    In referring to the "prior Fujitsu litigation," the court appears to have been referencing both case No. 2:16-cv-01299-JRG and a subsequent short-lived suit Oyster filed against FNC, Fujitsu, and Fujitsu Optical, case No. 2:18-cv-0153-JRG.  Oyster stipulated to the dismissal of the latter nine days after filing its complaint.  We adopt the same convention, referring to both actions collectively as the "prior Fujitsu litigation."

and '100G/400G Integrated Coherent Receiver' products." Further, ALU and Cisco urged that the model numbers were "exemplary." In its *November 7th Order*, the court held that ALU and Cisco's interpretation of the relevant part of the *Summary Judgment Decision* was correct. *November 7th Order* at 2.

Following the entry of judgment, Oyster timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I.

We review a grant of summary judgment in accordance with the law of the regional circuit. *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1379 (Fed. Cir. 2016). The Fifth Circuit reviews a grant of summary judgment de novo. *Kinsale Ins. v. Georgia-Pacific, L.L.C.*, 795 F.3d 452, 454 (5th Cir. 2015). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

We also review the interpretation of contract terms under regional circuit law. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006). The Fifth Circuit reviews a district court's interpretation of a contract de novo. *Dallas/Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 248 (5th Cir. 2016) ("The contract in this case is governed by Texas law, under

which contract interpretation and whether a contract is ambiguous are questions of law."). Under Texas law, the intent of the parties is to be determined from the agreement itself, not from a party's later interpretation of it. *See Las Colinas Obstetrics-Gynecology-Infertility Ass'n P.A. v. Villalba*, 324 S.W.3d 634, 639–40 (Tex. App. 2010).

## II.

Oyster makes three main arguments on appeal. First, it contends that the district court erred when it construed the "[f]or further clarity" provision to not apply to the release of Section 3.1. Appellant's Br. 20–38. Second, even if the "[f]or further clarity" provision does not apply to Section 3.1, Oyster urges, the plain language of that Section does not provide a release for a customer to buy Fujitsu's components and then incorporate them into an infringing product. *Id.* at 38–40; Reply Br. 4–11. Third, Oyster contends that the district court's alternative ruling is incorrect because the Fujitsu modulators and receivers do not "substantially embody" the claims of the '327 patent. This is so, Oyster alleges, because the claims of the '327 patent are directed to a transceiver card and require components in addition to a modulator and a receiver. Appellant's Br. at 42–46. In the Fujitsu litigation, Oyster argues, Oyster consistently accused only Fujitsu's transceiver card and module of direct infringement, not the Fujitsu modulators and receivers, which Oyster states it accused only of indirect infringement. *Id.* at 46–54. Oyster further argues that the court's alternative ruling is incorrect because Oyster's statements in the prior Fujitsu litigation pertained only to specific models of Fujitsu modulators and receivers and "many of ALU's and Cisco's products [currently] accused of infringement utilize Fujitsu modulators and/or receivers with model numbers that do not appear in the lists in Oyster's contentions [in the prior Fujitsu litigation]." *Id.* at 54–57. In addition, Oyster contends the district court erroneously construed Oyster's statements from the prior Fujitsu

litigation to be legally binding judicial admissions. *Id.* at 50–54.

In response, Appellees argue that the district court properly found that the"[f]or further clarity" provision of Section 1.3 does not limit the scope of the term "Licensed Products." Rather, it serves to acknowledge the law of patent exhaustion and clarifies that Fujitsu's customers have not been awarded a prospective license. Appellees' Br. 22–23, 34–40. Appellees contend that Oyster waived its second argument by not raising it before the district court. Even if we were to consider the argument, Appellees argue, the language of Section 3.1's release applies to "any and all claims of infringement under any patent right" and thus encompasses Appellees' use of Fujitsu components in their products. Appellees' Br. 43–45.

Appellees also urge us to affirm the district court's alternative ruling. Appellees assert that "[u]ndisputed evidence—Oyster's contentions, pleadings, and expert reports in the Fujitsu litigation—shows that the Fujitsu components in Cisco's and ALU's products substantially embody the '327 patent's claimed invention under the [Agreement]." Appellees' Br. 26, 45–65. Oyster and its experts have admitted that the Fujitsu components in this case perform in materially the same way as the Fujitsu modulators and receivers named in the prior Fujitsu litigation, Appellees state.

For the reasons that follow, we affirm the decision of the district court on the basis of its alternative ruling. We express no view with respect to the court's primary ruling.

## III.

As noted, Section 3.1 of the Oyster/Fujitsu Agreement provides a release to "all customers . . . of FNC, Fujitsu Limited, and their Affiliates," with respect to "Licensed Products or components of Licensed Products." Section 1.3 of the Agreement defines "Licensed Products" broadly.

Then, in the "[f]or further clarity" provision, it states that, when the "only reasonable and intended use of the component comprising the Licensed Product is to practice the claim and the component substantially embodies the patented invention by embodying its essential features," Oyster is "prevent[ed] from exercising its patent rights" under the Agreement. *Summary Judgment Decision* at 12–15. The question presented by the district court's alternative ruling is a narrow one. The parties do not dispute that "the only reasonable and intended use" of the Fujitsu modulators and receivers contained in Appellees' accused products is to practice the asserted claims of the '327 patent. Thus, the only issue to be decided is whether the Fujitsu modulators and receivers "substantially embod[y] the patented invention by embodying its essential features."

In addressing this issue at the conclusion of the August 9 hearing, the district court stated:

> [T]he claims, positions, assertions, contentions, and other positions of [Oyster] in this litigation are such that they would fall within the language of the "for further clarity" provision, which I think is undisputedly lifted from language addressing the concept of patent exhaustion, such that even if it were a limitation on licensed products, in this case, [ALU and Cisco] would be within that limitation based on what [Oyster has] alleged and how [it] ha[s] pursued the litigation in this case heretofore, such that they would meet that limitation and would also be released.

*Pre-Trial Hearing Transcript* at 71–72. Thus, the district court reasoned that Oyster's infringement contentions served to satisfy ALU's and Cisco's burden of establishing that the Fujitsu modulators and receivers contained in ALU's and Cisco's products substantially embody the patented invention by embodying its essential features. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366–67

(Fed. Cir. 2000) (holding the plaintiff-patentee's allegations of infringement satisfied the defendants' burden to prove the accused products were infringing for purposes of the on-sale bar under pre-American Invents Act 35 U.S.C. § 102(b)); *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997) (same). We think evidence in the record clearly supports the district court's conclusion.

In its suit against FNC, Oyster accused the Fujitsu modulators and receivers of directly infringing the '327 patent. This is evident from the following: (1) In case No. 2:16-cv-01299-JRG, Oyster defined "Accused Instrumentalities" to include the Fujitsu modulators and receivers in its infringement contentions and accompanying claim charts. *See, e.g., Summary Judgment Decision* at 13 (quoting Oyster's infringement contentions which state "the Fujitsu 100G/400G LN Modulator . . . is a transceiver card with a transmitting and receiving interface"). (2) Oyster's expert on infringement in case No. 2:16-cv-01299-JRG included the Fujitsu modulators and receivers in his definition of "Accused Products" that he analyzed for infringement. (3) In the short-lived complaint filed in case No. 2:18-cv-0153-JRG, Oyster defined "Accused Instrumentalities" to include the Fujitsu modulators and receivers. (4) Finally, in the present case, Oyster's expert on exhaustion confirmed that Oyster's infringement contentions in case No. 2:16-cv-01299-JRG and its complaint in case No. 2:16-cv-01299 accused the Fujitsu modulators and receivers of directly infringing the '327 patent. *Id.* at 15–16.

We recognize that in *Vanmoor* and *Evans Cooling* the contentions that served to establish the accused products were infringing for purposes of the on-sale bar were set forth in the plaintiffs' complaints. In this case, the evidence to which the district court pointed, except for the contentions in the complaint in case No. 2:18-cv-0153-JRG, consisted of infringement contentions and expert

testimony, not complaint allegations. That said, in the circumstances of this case, we do not think it was error for the district court to rely on this material, especially infringement contentions, which served to flesh out the infringement allegations in the prior Fujitsu litigation.[6]

In sum, in the face of its repeated and consistent statements alleging infringement of the '327 patent by the Fujitsu modulators and receivers themselves, Oyster's present argument that the modulators and receivers are merely claim components and do not practice the claim or substantially embody the invention of the '327 patent is not persuasive. In other words, we do not believe the district court erred when it found, for purposes of the Oyster/Fujitsu Agreement: (i) that the Fujitsu modulators and receivers at issue embody the essential features of the patented invention in view of "what [Oyster] alleged and how [it] . . . pursued the litigation"; and (ii) that the Fujitsu modulators and receivers thus fall under the release of liability for directly infringing devices. *Pre-Trial Hearing*

---

[6]    Oyster's argument that its statements made in connection with the prior Fujitsu litigation were made in a different case are unavailing, particularly with respect to the statements and testimony from case No. 2:16-cv-01299-JRG, which Oyster originally filed against FNC. As noted, Oyster's suits against ALU, Cisco, and FNC were consolidated into case No. 2:16-cv-01302-JRG. After the cases were consolidated, Oyster filed a motion for leave to amend its infringement contentions with respect to FNC, to which it attached its updated contentions defining the Accused Instrumentalities to include the Fujitsu modulators and receivers. Pl.'s Mot. for Leave to Amend its P.R. 3–1 Infringement Contentions with Regard to Fujitsu Network Communications, Inc., *Oyster Optics, LLC. v. Coriant (USA) Inc.*, No. 2:16-cv-01302 (E.D. Tex. Dec. 6, 2017), ECF No. 193 (redacted).

*Transcript* at 71–72; *see High Point SARL v. T-Mobile USA, Inc.*, 640 F. App'x 917, 929–30 (Fed. Cir. 2016) ("T-Mobile persuasively established that, in view of High Point's own infringement contentions, the accused [products] substantially embodied every purportedly inventive element of the claimed inventions."). Accordingly, we agree with the district court that the release of Section 3.1 of the Agreement applies to ALU and Cisco as to "any claim of infringement relating to the '327 patent where the accused products contain one of the Accused Instrumentalities of the Fujitsu litigation." *See Summary Judgment Decision* at 12–15.

Nor do we find the district court's ruling in the *November 7th Order* clarifying the scope of its alternate ground in the *Summary Judgment Decision* to be in error. Appellees provided evidence that Oyster based its infringement allegations in the Fujitsu litigation on compliance with a standard that encompasses the category of 100G/400G LN Modulators and 100G/400G Integrated Coherent Receivers comprising the Fujitsu modulators and receivers contained in Appellees' accused products. *See* Complaint, *Oyster Optics, LLC v. Fujitsu Network Comms., Inc.*, No. 2:16-cv-01299-JRG (E.D. Tex. Nov. 23, 2016), ECF No. 1 at 3–7, J.A. 2215–19. Oyster has not rebutted this showing with, for example, evidence of any differences between the model numbers recited in the prior Fujitsu litigation and those model numbers used in Appellees' products.

CONCLUSION

For the foregoing reasons, we affirm the *Summary Judgment Decision*.

**AFFIRMED**

COSTS

No costs.